UNITED STATES v. MILLER et al.

(Circuit Court, S. D. Georgia, E. D. March 20, 1911.)

CARRIERS (§ 38*)—INTERSTATE COMMERCE LAW—VIOLATION.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1909, p. 1153), provides that every common carrier subject to the act shall file with the Interstate Commerce Commission, and print and keep open to public inspection, schedules showing all rates, etc., and containing the classification of freights in force, and any rules or regulations affecting or determining any part or the aggregate of such rates, or the value of services rendered to the passenger, shipper, or consignee, and that copies of such schedules for the use of the public "shall be kept posted in two public and conspicuous places in every depot, station or office of such carrier where passengers or freight, respectively, are received for transportation." *Held*, that an indictment charging shippers with receiving a concession, in that they accepted transportation of certain freight at a less rate than that filed with the Interstate Commerce Commission, but which failed to charge that the higher rate so filed had been and was posted as required, was fatally defective.

[Ed. Note—For other cases, see Carriers, Dec. Dig. § 38.*]

Harvey C. Miller and another were indicted for violating the Interstate Commerce Act as amended. On demurrer to indictment. Sustained.

See, also, 187 Fed. 369.

Alexander Akerman, Asst. U. S. Atty., and Wm. M. Toomer, John H. Marble, and S. H. Smith, Sp. Asst. U. S. Attys.

Osborne & Lawrence and M. H. Todd, for defendants.

SPEER, District Judge (orally). This question must be determined in view of certain fundamental principles for the construction of statutes. It is a criminal statute, and, of course, must be strictly construed. It may be said that it is a statute in derogation of common law, although in a sense remedial in its character. Before its enactment, however, both the shipper and the carrier had the right to pay or charge such freight charges as they might agree upon. For this reason, also, I think that those provisions of the law to which the penal provisions have been attached must be strictly construed; that is to say, when an indictment is framed with the view of imposing a penalty upon a carrier or a shipper, it must set forth with sufficient fullness every essential feature of the law for the violation of which the accused is charged.

This defendant, as I understand it, speaking generally, is indicted for accepting or securing a less rate than that which has been estab-

lished and published as required by law. Now, how does Congress provide that such rates shall be established and published as required by law? On page 895, Supplement of 1907 (page 1153, Supp. 1909), to Compiled Statutes of the United States, published by the West Publishing Company, we find this language, which is taken from the act of Congress on the subject:

"Every common carrier subject to the provisions of this act shall file with the commission created by this act and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and points on the route of any other carrier by railroad. * * * The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classification of freight in force * * * any any rules or regulations which in any wise change, affect, or determine any part of the aggregate of such aforesaid rates, fares and charges, or the value of the service rendered to the passenger, shipper, or consignee. Such schedules shall be plainly printed in large type, and copies for the use of the public shall be kept posted in two public and conspicuous places in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected."

The important ground of demurrer is that the indictment does not allege such posting. So important is this law that a failure to comply with it is itself made the subject of an indictment. It is intended to give information to shippers, so that no individual may violate the general provisions of the interstate commerce law at the initial point of shipment. It is intended to bring the law home to the people, a knowledge of the law, and of the rates; and that is one, and perhaps the most essential, of the forms of publication required by the statute. The schedules of such rates must not only be published, but filed under the instructions of the commission, and for its remedial action—a most important remedial action under the present condition of the law, because it can suspend these tariffs when it finds that they are unjust, arbitrary, or discriminatory, and protect the people in that way. They must be published, not only to protect the people against the railroads, but the railroads against themselves and the shipper.

If it had been alleged in the indictment that these rates had been published as required by law—I understand it is conceded that it is not so alleged—I think the indictment would have been sufficient; the language of the law being that such schedules shall be plainly printed in large type and copies for the use of the public shall be kept posted in two public and conspicuous places in every depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation, in such form that they shall be accessible to the public and can be conveniently inspected. But the indictment does not, in my judgment, conform to the statute. The language used is:

"That before and during the period of time aforesaid schedules and tariffs (which are too voluminous to be here set forth), as required by law, were filed and kept on file with the Interstate Commerce Commission of the United States, and said schedules were printed and kept open to public inspection by said common carriers, specifying the names of said corporation common carriers."

Now, this does not appear to be a compliance with the statute, which not only requires large and conspicuous type, but also that for the use of the public copies shall be kept posted in two public and conspicuous places in the depot, station, or office of such carrier where passengers or freight, respectively, are received for transportation. It is expressly declared that this shall be done in such form that these rates shall be accessible to the public. It is further declared that this is done in order that the schedules shall be conveniently inspected. The provisions of this section of the law are to apply to all traffic, transportation, and facilities defined in this act.

Now, how valuable is this provision to the shipper whose home is remote from the files of the Interstate Commerce Commission. How valuable to the plain or humble man, to whom at times, perhaps, the station agent may not impart the information as to the legal rate, as ungrudgingly and cheerfully as he ought to do. If the law as to posting is complied with, the shipper does not need to inquire elsewhere.

This court has little regard for unessential technicalities; but this provision for posting the rates of interstate transportation near the homes of the people is regarded as of inestimable value to the shipping public. It is frankly confessed in the argument that in point of fact it would be impossible to prove that such posting was done, and it was therefore not alleged.

Now the defendants are shippers. It is insisted that they knew all about the rates. This may be true, but the law is made for all. A cardinal principle is that they are presumed to be innocent until the contrary is made to appear by proof. This can only be done by due process of law. No matter how guilty they may be, they cannot be held to answer save on indictment or presentment of a grand jury. They are held on such an indictment, but since it is not alleged therein, is not true, and therefore cannot be alleged in such indictment, that the law, which was enacted to charge them with notice, has been complied with, that is to say, that the rates from which they departed were not posted and published as required by law, the court, in its construction of the law, must hold the indictment insufficient for the absence of compliance with this feature of the statute. Requiring the posting of rates is an important method of publication, and therefore notice to the public. Innumerable prosecutions under the opposite contention might be brought against the uninformed, or partially informed, who, if the rates had been posted, would not have violated the law at all.

The other grounds of the demurrer are not regarded as of consequence. I reach this conclusion with less hesitation because of the wise and recent provision in our criminal procedure which accords to the government the right of exception and review by the Supreme Court upon rulings of the trial courts involving the construction of a law.